RECEIPT # 63104
AMOUNT $ 250
SUMMONS ISSUED Y-1
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. ___
DATE 3-30-05

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| GENZYME CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| SYNPEP CORPORATION | ) | 05 - 10 |
| | ) | |
| Defendant. | ) | |

MAGISTRATE JUDGE _____

## COMPLAINT AND JURY DEMAND

This is an action by Plaintiff Genzyme Corporation ("Genzyme") against Defendant SynPep Corporation ("SynPep") for breach of contract, breach of the covenant of good faith and fair dealing, and unfair trade practices. In late July 2002, the parties entered into a Sales Agreement ("Agreement") whereby SynPep agreed to purchase a minimum amount of certain amino acid derivatives ("Product") from Genzyme over the course of a year. *See* Sales Agreement, attached as Exhibit 1. The Agreement provides that if SynPep does not purchase a minimum amount of Product during that time period, it must pay Genzyme seventy-five percent (75%) of the contract price for all unpurchased Product within 60 days of termination of the Agreement. *Id.* at ¶¶ 3, 6. Subsequently, SynPep failed to purchase a sufficient amount of Product from Genzyme. The Agreement terminated on or about July 31, 2003. In violation of the explicit terms of the Agreement, Genzyme has still not received payment from SynPep for the unpurchased

Product. As a result of SynPep's breach of the Agreement, Genzyme suffered at least **$105,345.75** in damages.

## PARTIES

1. The Plaintiff Genzyme Corporation is a Massachusetts corporation with a principal place of business located in Cambridge, Massachusetts.

2. The Defendant SynPep Corporation is a Delaware corporation with a principal place of business located in Dublin, California.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 in that this action is between citizens of different states and seeks damages in excess of $75,000.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(a) in that a substantial part of the acts, conduct, and/or omissions at issue occurred in this District.

## FACTUAL BACKGROUND

5. Genzyme is a biotechnology corporation which is dedicated to the research and development of products and services which serve to improve the lives of patients with illnesses and diseases.

6. As part of its corporate structure, Genzyme operates a business unit called Genzyme Pharmaceuticals. Genzyme Pharmaceuticals focuses on manufacturing custom and commodity compounds sold to pharmaceutical companies for their consumption or incorporation into their products. One of Genzyme Pharmaceuticals' primary focuses is the production and sale of standard and custom amino acid derivatives. For purposes of this Complaint, Genzyme, including its Genzyme Pharmaceuticals business unit, will collectively be referred to as "Genzyme."

7. SynPep is a corporation which is engaged in the business of providing synthetic peptides and related services to various companies, industries, and research institutes. Peptides are short chain amino acids used by scientists to conduct certain drug and/or chemical research. SynPep typically purchases amino acid derivatives from a biotechnology company such as Genzyme and then converts them into synthetic peptides which are then sold to research laboratories.

8. In 2000 and 2001, Genzyme occasionally supplied SynPep with amino acid derivatives on a small scale. However, in or about early 2002, representatives of SynPep approached David M. DeLoria, Director of Marketing and Special Projects for Genzyme Pharmaceuticals, to discuss the possibility of Genzyme becoming SynPep's sole supplier of amino acid derivatives.

9. Over the next several months, Mr. DeLoria and others at Genzyme, including Daniel O. Hayden, Senior Vice President & General Manager of Genzyme Pharmaceuticals, met with SynPep's President and Chief Executive Officer, Dr. Chi Yang, and other SynPep executives, on at least three occasions to discuss Genzyme's sale of large quantities of amino acid derivatives to SynPep. One of those meetings took place at Genzyme's offices in Cambridge, Massachusetts.

10. During the parties' meetings, Genzyme and SynPep discussed in detail the nature of their future business relationship and the terms of the Agreement at issue. Specifically, both parties acknowledged that to protect Genzyme's investment in the production and storage of large quantities of amino acid derivatives, SynPep would be required to purchase a minimum amount (at least 30 kilograms) of designated Product and compensate Genzyme in the event it failed to purchase such minimum amounts.

11. On or about July 16, 2002, Mr. DeLoria sent SynPep's Gary Gottschling an original of the parties' Agreement executed by Mr. Hayden on behalf of Genzyme. The Agreement was subsequently signed by Mr. Yang on behalf of SynPep and, thereafter, the fully executed Agreement was returned to Genzyme. *Id.* The Agreement became effective on or about July 31, 2002.

12. As the parties discussed, the Agreement requires SynPep to purchase a minimum amount of certain amino acid derivatives from Genzyme over the course of the Agreement. *Id.* at ¶ 3. Specifically, Paragraph 3 of the Agreement, entitled "Quantities and Forecasts," states that "[b]uyer agrees to purchase an amount equal to or greater than thirty (30) Kilograms of each individual Product listed in Schedule A of this agreement within the one (1) year of the Agreement." *Id.* at ¶ 3.

13. Similarly, the Agreement provides that in the event SynPep fails to purchase a minimum amount of the Product, Genzyme will be entitled to recoup a portion of the contract price for all unpurchased Product. Specifically, Paragraph 6 of the Agreement, entitled "Failure to Purchase Binding Forecast Quantities," states that:

> [i]n the event that Buyer fails to purchase during the term of this Agreement the amount of Product specified in Section 3, hereof, Buyer will pay Seller within (60) days of the termination of this Agreement an amount equal to **75% of the contract price of the unpurchased Product as set forth in Schedule A**.

(emphasis added) *Id.* at ¶ 6.

14. Thereafter, contrary to Paragraph 3 of the Agreement, SynPep failed to purchase a sufficient amount of Product from Genzyme during the term of the Agreement. *Id.* at ¶ 3. The following table specifically identifies the amino acid

derivatives for which SynPep did not satisfy its minimum purchase quota and the damages sustained by Genzyme under the Agreement.

| Product | Product Number | Price per Kilo | # of Kilos < 30 Purchased | Contract Price of Unpurchased Product |
|---|---|---|---|---|
| Fmoc-L-Asn(Trt)-OH | FC-01-048 | 1,185 | 1 | $1,185 |
| Fmoc-L-Cys(Trt)-OH | FC-01-025 | 2,100 | 11 | $23,100 |
| Fmoc-L-Gln(Trt)-OH | FC-01-050 | 1,422 | 1 | $1,422 |
| Fmoc-Gly-OH | FC-05-028 | 490 | 11 | $5,390 |
| Fmoc-L-His(Trt)-OH | FC-O1-031 | 1,700 | 14 | $23,800 |
| Fmoc-L-Ile-OH | FC-01-005 | 450 | 8 | $3,600 |
| Fmoc-L-Leu-OH | FC-01-004 | 450 | 1 | $450 |
| Fmoc-L-Met-OH | FC-01-007 | 450 | 21 | $9,450 |
| Fmoc-L-Phe-OH | FC-01-008 | 450 | 15 | $6,750 |
| Fmoc-L-Pro-OH | FC-01-034 | 450 | 9 | $4,050 |
| Fmoc-L-Trp(Boc)-OH | FC-01-052 | 3,000 | 20 | $60,000 |
| Fmoc-L-Tyr(tBu)-OH | FC-01-036 | 1,264 | 1 | $1,264 |
|  |  |  |  |  |
|  |  |  | Total Amount | $140,461.00 |
|  |  |  | 75% of Contract Price of Unpurchased Product | $105,345.75 |

15. Given its failure to purchase the minimum amount of Product required by the Agreement, SynPep was obligated to pay Genzyme $105,345.75 (75% of the contract purchase price for unpurchased Product) within 60 days after termination of the Agreement. *Id.* at ¶ 6. Given that the Agreement terminated on or about July 31, 2003, payment to Genzyme was due by approximately September 29, 2003. However, to date, Genzyme has still not received any such payment from SynPep.

16. On April 27, 2004, Genzyme sent a letter to SynPep's Gary Gottschling explaining in detail how SynPep had violated the Agreement and requesting that SynPep

5

promptly pay Genzyme the money it is owed--$105,345.00. Genzyme did not receive any response to its letter.

17. Thereafter, on August 20, 2004, Genzyme sent a second letter to SynPep demanding payment under the terms of the Agreement. Once again, SynPep ignored Genzyme's correspondence and did not respond.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

18. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs one through seventeen as if fully stated herein.

19. Genzyme and SynPep entered into an Agreement, effective on or about July 31, 2002, whereby SynPep agreed to purchase from Genzyme a minimum amount of Product during the one year term of the Agreement. *Id.* at ¶ 3.

20. The Agreement specifically states that if SynPep does not purchase a minimum amount of such Product, it must pay Genzyme seventy-five percent (75%) of the contract price for all unpurchased Product within 60 days of termination of the Agreement. *Id.* at ¶ 6.

21. SynPep failed to purchase a minimum amount of Product and, thereafter, did not pay Genzyme for the unpurchased Product as required by the terms of the Agreement.

22. As a result of SynPep's breach of contract, Plaintiff has suffered damages.

6

## COUNT II
## BREACH OF THE IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

23.  Plaintiff repeats and incorporates by reference the allegations contained in paragraphs one through twenty-two as if fully stated herein.

24.  SynPep breached the covenant of good faith and fair dealing implied in the Agreement by failing to pay Genzyme seventy-five percent (75%) of the contract price for the unpurchased Product within sixty (60) days of termination of the Agreement.

25.  As a result of SynPep's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages.

## COUNT III
## UNFAIR TRADE PRACTICES

26.  The Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs one through twenty-five as if fully stated herein.

27.  Upon entering into the Agreement at issue with Genzyme, SynPep engaged in trade or commerce within the Commonwealth of Massachusetts. The acts of SynPep set forth above including, but not limited to, (1) its inducement of Genzyme into manufacturing and storing large quantities of Product; (2) its breach of the Agreement by not paying Genzyme for its failure to purchase a minimum amount of Product; (3) its failure to respond to correspondence sent by Genzyme regarding the issues in dispute; and (4) its bad faith refusal to pay Genzyme for the damages that it has suffered, are unfair and deceptive acts under Mass. Gen. L. ch. 93A, §§ 2, 11.

28.  The actions constituting SynPep's unfair and deceptive acts occurred primarily and substantially within Massachusetts. Specifically, the Agreement was

negotiated in Massachusetts, and Genzyme suffered a breach of the Agreement and sustained damages while operating in Massachusetts.

29. SynPep's violations of Mass. Gen. L. ch. 93A were willful.

30. As a result of SynPep's unfair and deceptive acts, Plaintiff has sustained damages.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor on Counts I-III of the Complaint and grant the following relief:

1. Under Counts I and II, award damages in the amount of $105,345.75, plus interest;

2. Under Count III, find that the Defendant has committed willful violations of Mass. Gen. L. ch. 93A, §§ 2, 11, and award the Plaintiff treble damages and attorneys' fees;

3. Award Plaintiff its reasonable costs, including attorneys' fees and expenses, incurred in connection with this case; and

4. Grant such further relief as the Court considers appropriate.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues so triable.

>Respectfully submitted by the Plaintiff,
>
>**GENZYME CORPORATION**
>
>By its attorney,
>
>_____
>Alexander Furey, BBO# 634157
>Furey & Associates LLC
>28 State Street
>Suite 1100
>Boston, Massachusetts 02109
>Phone (617) 573-5114

Dated: March 30, 2005

Confidential

## SALES AGREEMENT

This Sales Agreement (the "Agreement) is by and between 'Genzyme Corporation of Cambridge, MA (hereinafter "Seller") and SynPep Corporation of Dublin, CA (hereinafter "Buyer").

WHEREAS, Buyer desires to purchase from Seller and Seller desires to sell to Buyer amino acid derivatives manufactured by Seller under the terms and conditions set forth herein.

NOW, THEREFORE, the parties, intending to be legally bound, agree as follows:

1. Product: Amino acid derivatives as indicated in Schedule A attached hereto ("Product")

2. Term & Termination: This Agreement shall be in effect for one (1) year from date of receipt of the first Purchase Order from Buyer.

3. Quantities and Forecasts: Buyer agrees to purchase an amount equal to or greater than thirty (30) Kilograms of each individual Product listed in Schedule A of this agreement within the one (1) year term of the Agreement
Seller agrees to maintain inventory equal to or greater than ten (10) kilograms of each product at all times in a US location which allows for overnight shipment of the product to Buyer.

4. Order Process: Buyer shall issue a purchase order for each delivery of Product under this Agreement. Each purchase order shall designate the quantity of Product to be delivered, the desired shipment date and delivery destination. Each delivery of Product shall be accompanied by Seller's Certificate of Analysis for every product purchased. If any terms and conditions contained in such purchase order or acknowledgment conflict with the terms of the Agreement, the terms and conditions of this Agreement shall apply to the transaction.

5. Certificate of Analysis: Seller shall test, or cause to be tested, in accordance with the specifications, each batch of the Product manufactured pursuant to this Agreement before delivery to the Buyer. A certificate of analysis ("Certificate of Analysis") for each batch delivered shall set forth the items tested, specifications, and test results. Seller shall send, or cause to be sent, Certificates of Analysis to Buyer with each shipment. If the quality of the product is determined to be less than that specified in the Certificate of Analysis, it can be returned for full credit.



6.   **Failure to Purchase Binding Forecast Quantities**: In the event that Buyer fails to purchase during the term of this Agreement the amount of Product specified in Section 3 hereof, Buyer will pay Seller within sixty (60) days of the termination of this Agreement an amount equal to 75% of the contract price of the unpurchased Product as set forth in Schedule A.

7.   **Price**: The price of the Products is listed in Schedule A to this Agreement and made a part hereof and shall remain in effect during the entire term of this Agreement

8.   **Deliveries**: Deliveries shall be F.O.B. Seller's US warehouse. Buyer shall be responsible for all delivery costs for orders comprising shipment of less than 10 kilograms of Product. Seller assumes responsibility for selection of carrier for all deliveries and all delivery costs associated with orders equal to or greater than 10 kilograms of total Product.

9.   **Terms of Payment**: All payments owed under this Agreement shall be paid in net cash thirty (30) days from date of Seller's invoice. Buyer shall receive a 2% discount for 10 day net 30 day payment. SynPep shall receive an initial line of credit from Genzyme of $100,000.00.

IN WITNESS WHEREOF, the parties have caused this agreement to be executed by their duly authorized representatives as of the date last written below.

GENZYME CORPORATION            SYNPEP CORPORATION

By: _____   By: _____CEO & president_____

Name: DANIEL O'HAYDEN          Name: CHI YANG

Title: V.P. & General Manager   Title: Chi Yang
Genzyme Pharmaceuticals



Genzyme Pharmaceutical Materials 

**Schedule A**

|  | Product No. | $/1 kg | 30kg | $ total |
|---|---|---|---|---|
| Fmoc-L-Ala-OH | FC-01-001 | 450 | x 30 | 13500 |
| Fmoc-L-Arg(Pbf)-OH | FC-01-053 | 3000 | x 30 | 90000 |
| Fmoc-L-Asn(Trt)-OH * | FC-01-048 | 1185 | x 30 | 35550 |
| Fmoc-L-Asp(OtBu)-OH | FC-01-016 | 1800 | x 30 | 54000 |
| Fmoc-L-Cys(Trt)-OH | FC-01-025 | 2100 | x 30 | 63000 |
| Fmoc-L-Gln(Trt)-OH * | FC-01-050 | 1422 | x 30 | 42660 |
| Fmoc-L-Glu(OtBu)-OH | FC-01-027 | 1738 | x 30 | 52140 |
| Fmoc-Gly-OH | FC-05-028 | 490 | x 30 | 14700 |
| Fmoc-L-His(Trt)-OH | FC-01-031 | 1700 | x 30 | 51000 |
| Fmoc-L-Ile-OH | FC-01-005 | 450 | x 30 | 13500 |
| Fmoc-L-Leu-OH | FC-01-004 | 450 | x 30 | 13500 |
| Fmoc-L-Lys(Boc)-OH | FC-01-033 | 1700 | x 30 | 51000 |
| Fmoc-L-Met-OH | FC-01-007 | 450 | x 30 | 13500 |
| Fmoc-L-Phe-OH | FC-01-008 | 450 | x 30 | 13500 |
| Fmoc-L-Pro-OH | FC-01-034 | 450 | x 30 | 13500 |
| Fmoc-L-Ser(tBu)-OH | FC-01-011 | 1343 | x 30 | 40290 |
| Fmoc-L-Thr(tBu)-OH | FC-01-013 | 1343 | x 30 | 40290 |
| Fmoc-L-Trp(Boc)-OH * | FC-01-052 | 3000 | x 30 | 90000 |
| Fmoc-L-Tyr(tBu)-OH | FC-01-036 | 1264 | x 30 | 37920 |
| Fmoc-L-Val-OH | FC-01-015 | 450 | x 30 | 13500 |

*Manufactured under license agreement                    25,285



JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Genzyme Corp.

**DEFENDANTS**
SynPep Corp

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Alexander Furey (617) 573-5114
Furey & Associates LLC
28 State Street, Suite 1100
Boston, MA

Attorneys (If Known)

**05-10626 PBS**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [x] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated and Principal of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 362 Personal Injury-- Med. Malpractice | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 423 Withdrawal 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / [ ] 365 Personal Injury Product Liability | [ ] 630 Liquor Laws | | [ ] 450 Commerce/ICC Rates/etc |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | [ ] 640 R.R. & Truck | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| [ ] 151 Medicare Act | | [ ] 650 Airline Regs | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 340 Marine / **PERSONAL PROPERTY** | [ ] 660 Occupational Safety/Health | [ ] 830 Patent | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product Liability / [ ] 370 Other Fraud | [ ] 690 Other | [ ] 840 Trademark | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle / [ ] 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | [ ] 875 Customer Challenge 12 USC 3410 |
| [x] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability / [ ] 380 Other Personal Property Damage | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury / [ ] 385 Property Damage Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 863 DIWC/DIWW (405(g)) | [ ] 803 Environmental Matters |
| | | [ ] 730 Labor/Mgmt Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 894 Energy Allocation Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting / [ ] 510 Motions to Vacate Sentence | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | | **FEDERAL TAX SUITS** | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations / Habeas Corpus: | | | |
| [ ] 240 Torts to Land | [ ] 444 Welfare / [ ] 530 General | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights / [ ] 535 Death Penalty | | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | / [ ] 540 Mandamus & Other | [ ] 791 Empl. Ret. Inc Security Act | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 890 Other Statutory Actions |
| | / [ ] 550 Civil Rights | | | |
| | / [ ] 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Breach of Contract, Breach of Good Faith, 93A Claim

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION DEMAND UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE  3-30-05
SIGNATURE OF ATTORNEY OF RECORD
Alexander Furey, bbo# 634157

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)
   Genzyme Corp. v. SynPep Corp.

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740,
            790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    *Also complete AO 120 or AO 121
            for patent, trademark or copyright cases

   X   III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   ___ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   ___ V.   150, 152, 153.

   05-10626 PBS

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)). _____

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
   YES ☐   NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC 2403)   YES ☐   NO ☒
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
   YES ☐   NO ☒

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC 2284?   YES ☐   NO ☒

7. DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL DIVISION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)).   YES ☐   NO ☒
   OR IN THE WESTERN DIVISION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)?(SEE LOCAL RULE 40.1(D)).
   YES ☐   NO ☒

8. DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN DIVISIONS OF THE DISTRICT?
   YES ☐   NO ☒
   (a) IF YES, IN WHICH DIVISION DOES THE PLAINTIFF RESIDE? _____

9. IN WHICH DIVISION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE? _____

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE
    CENTRAL DIVISION; YES ☐  NO ☐       OR WESTERN DIVISION;   YES ☐   NO ☐

11. ALTERNATIVE DISPUTE RESOLUTION - IS THIS CASE SUITABLE FOR ADR? IF SO, BY WHICH ADR?
    EARLY NEUTRAL EVALUATION ☐      MEDIATION ☒      SUMMARY JURY/BENCH TRIAL ☐
    MINI-TRIAL ☐                    OTHER ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Alexander Furey
ADDRESS   28 State St., Suite 1100, Boston, MA 02129
TELEPHONE NO.   617-573-5114

(Category Form.wpd - 3/28/2000)